1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   REMON SHIELDS,

11              Plaintiff,                    No. 2:11-cv-0015 JAM EFB P

12        vs.

13   D. FOSTON, et al.,

14              Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Defendants move to dismiss for failure to state a claim upon which relief may be

18   granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff moves to amend.  For

19   the reasons explained below, the court recommends that defendants' motion to dismiss be

20   granted and plaintiff's motion to amend be denied.

21   **I.        Background**

22          This action proceeds on the complaint filed on January 3, 2011.  Dckt. No. 1.  Plaintiff

23   alleges that he is a Muslim prisoner serving a sentence of life without the possibility of parole

24   ("LWOP") with the California Department of Corrections and Rehabilitation ("CDCR") in

25   ////

26   ////

1

1   California State Prison, Sacramento ("CSP-Sac").  *Id.* at 4.[1]  Plaintiff alleges that his religion

2   requires that those who want to marry get married and then consummate the marriage.  *Id.* at 4

3   and 27 (declaration of Muslim Chaplain Daaiyallah Fardan).  Plaintiff alleges that his requests

4   for non-overnight "family visiting" were denied.  *Id.* at 4.  Documents attached to the complaint

5   reveal that the request was denied pursuant to California Code of Regulations, title 15, § 3177

6   (hereinafter "§ 3177"), which provides that individuals serving an LWOP sentence are ineligible

7   for CDCR's family visiting program.[2]  *Id.* at 5, 10-25.  Plaintiff seeks a declaration that this was

8   unlawful and an injunction ordering CDCR to provide him with "Non-overnight Family visit to

9   consummate his marriage and to add Non-overnight Family visiting to the [CDCR's] visiting

10  program for Muslim 'Lifer' prisoners who are not eligible for overnight Family visiting."  *Id.*

11  ////

12  ////

13  _____

14      [1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

15      [2] As relevant here, § 3177 provides:

16      Institution heads shall maintain family visiting policies and procedures. Family
17      visits are extended overnight visits, provided for eligible inmates and their
        immediate family members as defined in Section 3000, commensurate with
18      institution security, space availability, and pursuant to these regulations. . . .

19      ***

20      (b) Family visiting is a privilege. . . .

21      ***

22      (2) Family visits shall not be permitted for inmates who are in any of the
        following categories: sentenced to life without the possibility of parole; sentenced
23      to life, without a parole date established by the Board of Parole Hearings;
        designated Close A or Close B custody; designated a condemned inmate; assigned
24      to a reception center; assigned to an administrative segregation unit; assigned to a
        security housing unit; designated "C" status; guilty of one or more Division A or
25      Division B offense(s) within the last 12 months; or guilty of narcotics distribution
        while incarcerated in a state prison.

26      ***

2

**II.      Rule 12(b)(6) Standard**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

The court may additionally consider facts established by exhibits attached to the complaint, facts which may be judicially noticed, and matters of public record, including pleadings, orders, and other papers filed with the court. *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987); *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *Mack v. South Bay Beer Distribs*., 798 F.2d 1279, 1282 (9th Cir. 1986).

////

////

1    Similarly, the court may disregard allegations contradicted by the complaint's attached

2    exhibits and is not required to accept as true allegations contradicted by judicially noticed facts.

3    *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing,*

4    *Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998); *Sprewell v. Golden State Warriors*, 266 F.3d 979,

5    988 (9th Cir. 2001).

6    Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

7    *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

8    1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply

9    essential elements of a claim that are not pled.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

10   1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

11   Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

12   allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

13   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The court need not accept

14   unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

15   F.2d 618, 624 (9th Cir. 1981).  A pro se litigant is, however, entitled to notice of the deficiencies

16   in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be

17   cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

18   **III.    Analysis**

19       **A.      Motion to Amend**

20       The parties do not dispute that plaintiff has named the wrong individuals as defendants to

21   this action.  *Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (stating that the

22   proper defendant for injunctive relief regarding implementation of a CDCR policy is the

23   Secretary of the CDCR, in his official capacity).  Plaintiff seeks to amend his complaint to name

24   the Secretary of CDCR as sole defendant to cure this defect.  Dckt. No. 35.  Under Federal Rule

25   of Civil Procedure 15(b), the court should freely grant leave to amend when justice so requires.

26   ////

1    However, leave to amend is properly denied where amendment would be futile.  *Cahill v. Liberty*

2    *Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).  Because plaintiff's complaint is based on legal

3    theories that are not viable, as set forth below, amending the complaint to add the proper

4    defendant would be futile.  Even if this action is deemed to be against the Secretary, it cannot

5    proceed.  Accordingly, the court recommends that plaintiff's motion to amend the complaint be

6    denied.

7              **B.      Motions to Dismiss**

8              Plaintiff's complaint does not identify the federal law under which he seeks to challenge

9    section 3177.  The complaint does mention the phrase "least restrictive means" repeatedly,

10   however, in apparent reference to the Religious Land Use and Institutionalized Persons Act, 42

11   U.S.C. § 2000cc-1 (hereinafter, "RLUIPA").  Dckt. No. 1 at 5.  Defendants' motion to dismiss

12   also addresses the propriety of plaintiff's claim under the Free Exercise Clause of the First

13   Amendment and the Equal Protection Clause of the Fourteenth Amendment.  Accordingly, the

14   court will address the validity of § 3177's application to married Muslim inmates serving an

15   LWOP sentence under these three sources of law.

16             The First Amendment.  The Free Exercise Clause of the First Amendment provides,

17   "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S. CONST.,

18   Amend. I.  Any assertion that § 3177 runs afoul of that clause is defeated by the U.S. Supreme

19   Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990).  There, the Court held

20   that generally-applicable laws that incidentally burden a religious practice do not violate the Free

21   Exercise Clause.  494 U.S. at 878; *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).  Because

22   section 3177 does not prohibit conjugal visitation solely for Muslim life inmates, but all life

23   inmates regardless of religion, it does not violate the Free Exercise Clause.  *Cf. Turner v. Safley*,

24   482 U.S. 78, 95 (1987) (holding that a prison inmate retains those constitutional rights that are

25   not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

26   corrections system); *Noguera v. Rowland*, No. 90-15405, 1991 U.S. App. LEXIS 18367, at *1

1   (9th Cir. July 29, 1991) (holding that a condemned inmate's claim to a right to conjugal visits

2   under the Free Exercise Clause failed because the inmate could not "show that the prison

3   regulation prohibiting conjugal visits for condemned inmates is not rationally related to a valid

4   penological interest.").

5        The 14th Amendment.  The Equal Protection Clause of the Fourteenth Amendment

6   provides that no State shall "deny to any person within its jurisdiction the equal protection of the

7   laws."  U.S. CONST., Amend. XIV, § 1.

> When analyzing a discrimination claim under the Fourteenth Amendment, we
> must first determine the appropriate level of scrutiny to be applied.  If the rule
> disadvantages a suspect class or impinges upon a fundamental right, the court will
> examine it by applying a strict scrutiny standard.  If no such suspect class or
> fundamental rights are involved, the conduct or rule must be analyzed under a
> rational basis test.

12  *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990).  Prisoners serving an LWOP term do not

13  constitute a suspect class and there is no fundamental right to conjugal visits.  *Gerber v.*

14  *Hickman*, 291 F.3d 617, 621-22, 623 (9th Cir. 2002) (stating that "it is well-settled that prisoners

15  have no constitutional right while incarcerated to contact visits or conjugal visits" and applying

16  rational-basis scrutiny to a life prisoner's claim that denial of conjugal visits violated the Equal

17  Protection Clause).  Accordingly, the court reviews § 3177 under the rational basis test.  Under

18  that test, § 3177's discrimination against prisoners serving an LWOP term does not violate the

19  Equal Protection Clause if it bears some rational relationship to a conceivable legitimate state

20  purpose.  *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985).

21       In *Gerber*, the Ninth Circuit concluded that "it is completely rational for prison officials

22  to decide that maintaining contact with those outside prison is more important for inmates who

23  will eventually be released from prison than for those ineligible for parole."  291 F.3d at 623.

24  Accordingly, the court affirmed the dismissal of an inmate's claim that California's prohibition

25  on conjugal visits for life prisoners violated equal protection.  *Id.* at 623-24.  Defendants further

26  identify the conceivable legitimate state interest in institutional security.  *See Block v.*

1   *Rutherford*, 468 U.S. 576, 586 (1984) (noting the myriad security problems presented by contact

2   visits).  "That there is a valid, rational connection between a ban on contact visits and internal

3   security of a detention facility is too obvious to warrant extended discussion."  *Id.*  Thus,

4   plaintiff's equal protection challenge to § 3177 fails.

5          <u>RLUIPA</u>.  As relevant here, RLUIPA provides that "no [state or local] government shall

6   impose a substantial burden on the religious exercise of a person residing in or confined to an

7   institution," unless the government shows that the burden furthers "a compelling government

8   interest" by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2).  "Religious exercise"

9   includes "any exercise of religion, whether or not compelled by, or central to, a system of

10  religious belief."  *Id.* § 2000cc-5(7)(A).  A "substantial burden" is one that imposes a

11  significantly great restriction or onus on religious exercise.  *San Jose Christian College v. City of*

12  *Morgan Hill*, 360 F.3d 1024, 1034-35 (9th Cir. 2004).  The law applies to institutions receiving

13  federal funding (and there is no suggestion here that California prisons do not receive such

14  funding).  *Id.* § 2000cc-1(b)(1); *Cutter,* 544 U.S. at 715-16 n.4 (noting that all U.S. states receive

15  federal funding for prisons).

16         Defendants argue that dismissal of plaintiff's RLUIPA claim is warranted because § 3177

17  does not place a substantial burden on the ability of Muslim inmates to enter into valid Muslim

18  marriages.  In support, defendants cite *Fuller v. Cate*, 481 Fed. Appx. 413 (9th Cir. 2012).  In

19  *Fuller*, as here, a Muslim LWOP inmate claimed that the prison's denial of conjugal visits to him

20  deprived him of his right, under RLUIPA, to consummate his marriage and make it valid under

21  Islam.  *Id.* at 413.  The district court dismissed the action, and the Ninth Circuit affirmed that

22  dismissal, because "the attachments to Fuller's complaint show that the prison's prohibition on

23  conjugal visits for inmates serving life sentences without parole did not substantially burden his

24  ability to enter into a valid Islamic marriage."  *Id.*  Neither court held that, as a matter of law,

25  § 3177 does not substantially burden the ability of Muslim LWOP inmates to enter into valid

26  Islamic marriages.  Rather, the courts' dismissal of the claim was based on an extremely case-

1  specific situation – the particular plaintiff in *Fuller* had attached particular documents to his

2  complaint that contradicted his claim that consummation was necessary for a Muslim marriage to

3  be valid.  These particular facts are not present here.  Instead, plaintiff has attached to his

4  complaint a declaration of a Muslim Chaplain who attests that consummation *is* required.  Dckt.

5  No. 1 at 27.  Accordingly, *Fuller* cannot be relied on to support dismissal of plaintiff's

6  complaint.

7       Defendants' next argument – that section 3177 serves a compelling government interest

8  by the least restrictive means – finds better footing.  Defendants proffer the compelling state

9  interest of prison security and argue that denial of conjugal visits to LWOP inmates is the least

10  restrictive means of accomplishing that goal.

11       There is no doubt that prison security is a compelling state interest.  *Cutter*, 544 U.S. at

12  725 n.13 ("[P]rison security is a compelling state interest" and "deference is due to institutional

13  officers' expertise in this area.").  And, as the U.S. Supreme Court has recognized, contact visits

14  present "a host of security problems."  *Block*, 468 U.S. at 586.  Such visits

15       open the institution to the introduction of drugs, weapons, and other contraband.
       Visitors can easily conceal guns, knives, drugs, or other contraband in countless
16       ways and pass them to an inmate unnoticed by even the most vigilant observers.
       And these items can readily be slipped from the clothing of an innocent child, or
17       transferred by other visitors permitted close contact with inmates.

18  *Id.*  The High Court additionally recognized that contact visits for persons who have committed

19  serious, violent offenses present additional risks.  *Id.* at 586-87.  A judge of this district has

20  recognized California's conclusion, in promulgating § 3177, "that inmates with no parole dates

21  were considered escape and security risks, such that allowing such inmates to have family visits

22  was not compatible with public safety."  *Tuvalu v. Woodford*, No. CIV S-04-1724 RRB KJM P,

23  2008 WL 619158, at 3 (E.D. Cal. Mar. 4, 2008), *affirmed* at 389 Fed. Appx. 735 (9th Cir. 2010).

24       In determining whether section 3177 is the "least restrictive means" of serving the state's

25  compelling interest in prison security, the court must give "'due deference to the experience and

26  expertise of prison and jail administrators in establishing necessary regulations and procedures to

1    maintain good order, security and discipline, consistent with consideration of costs and limited

2    resources.'" *Cutter*, 544 U.S. at 722-23 (quoting an excerpt from the congressional history of

3    RLUIPA).  The court must not "elevate accommodation of religious observances over an

4    institution's need to maintain order and safety" and must instead apply RLUIPA "in an

5    appropriately balanced way, with particular sensitivity to security concerns."  *Id.* at 722.

6          Neither the U.S. Supreme Court nor the Ninth Circuit has yet addressed whether a

7    sincerely held religious belief necessitating conjugal visits must be accommodated under

8    RLUIPA.  *See Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012) (addressing a statute of limitations

9    issue but not the merits in a case challenging a denial of conjugal visits under RLUIPA; the case

10   is currently pending in the district court); *Fuller,* 481 Fed. Appx. 413 (concluding that

11   attachments to plaintiff's complaint demonstrated that the prohibition on conjugal visits for

12   LWOP inmates did not substantially burden plaintiff's right to enter into a valid Islamic

13   marriage).  The lower courts that have addressed the issue appear, thus far, to uniformly

14   conclude that such beliefs must give way to the need for institutional security.  *Robertson v.*

15   *Kansas*, No. 07-3162-SAC, 2007 U.S. Dist. LEXIS 91266, at *5-7 (D. Kan. Dec. 10, 2007)

16   (summarily denying plaintiff's claim for conjugal visits under RLUIPA because such visits

17   would burden prison officials and present security risks); *Marsh v. Granholm*, No. 2:05-cv-134,

18   2006 U.S. Dist. LEXIS 59203, at * (W.D. Mich., Aug. 22, 2006) (granting summary judgment

19   on plaintiff's RLUIPA claim because: (1) plaintiff, a murder convict, raised particular security

20   concerns regarding his continued incarceration, (2) plaintiff's incarceration was at odds with his

21   request to engage in private heterosexual procreation, and (3) the denial of conjugal visits was

22   the least restrictive means of furthering the government's interest in institutional safety).

23   Undoubtedly in recognition of these security concerns, courts have routinely and consistently

24   recognized that loss of sexual intimacy with a spouse is simply "part and parcel" of

25   imprisonment.  *Gerber v. Hickman*, 291 F.3d 617, 620-22 (9th Cir. 2002); *see also Turner*, 482

26   U.S. at 95 ("The right to marry, like many other rights, is subject to substantial restrictions as a

1   result of incarceration."); *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir. 1994) ("[E]ven

2   though the right to marriage is constitutionally protected for inmates, the right to marital privacy

3   and conjugal visits while incarcerated is not."); *Lucas v. Tilton*, No. 1:08-cv-00515-AWI-YNP

4   PC, 2010 U.S. Dist. LEXIS 8347, at *4-5 (E.D. Cal. Feb. 2, 2010) (concluding that the balance

5   of equities did not support plaintiff's request for a preliminary injunction allowing plaintiff to

6   have a conjugal visit with his wife "because the loss of intimate association is a well-known

7   aspect of being imprisoned for conviction of a crime.").

8        California prison administrators have determined that denying conjugal visits to inmates

9   serving LWOP terms is necessary to ensure the compelling state interest in prison security.

10  *Tuvalu*, 2008 U.S. Dist. LEXIS 16351, at *8-9.  Applying appropriate deference to that

11  conclusion and the state's costs and limited resources, as the court must (*Cutter*, 544 U.S. at 722-

12  23), section 3177 is sufficiently narrowly-tailored that it does not violate RLUIPA.  While

13  plaintiff argues that it would be less restrictive for the state to provide daytime conjugal visits to

14  him and other married Muslim LWOP inmates, such accommodation would not diminish the

15  security threat posed by allowing inmates in high-risk categories unsupervised visitation and

16  would impose additional administrative burdens on the state.  *See Block*, 468 U.S. at 587-88

17  (recognizing that it is extremely difficult for prison administrators to determine, from a group of

18  inmates, who poses a greater or lesser security risk, and thus concluding that, under the federal

19  Constitution, prison officials may permissibly deny contact visits to an entire inmate population).

20       Because section 3177 is narrowly tailored to accomplish the compelling government

21  objective of enhancing prison security, plaintiff's claim that the regulation violates RLUIPA

22  fails.

23  ////

24  ////

25  ////

26  ////

**IV.     Recommendation**

Accordingly, it is hereby recommended that defendants' September 12, 2012 and October 11, 2012 motions to dismiss (Dckt. Nos. 27 and 31) be granted.  Because amendment can not salvage plaintiff's claims, it is further recommended that plaintiff's November 19, 2012 motion to amend (Dckt. No. 35 be denied).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 9, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE